UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIE OTIS WASHINGTON,

        Petitioner,

                                          Case No.  1:11-cv-1273

v.

                                          Hon. Gordon J. Quist

MARY BERGHUIS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.       Background**

        Following a jury trial, petitioner was convicted of four counts of first-degree criminal sexual conduct (CSC I), M.C.L. § 750.520(b)(1)(a) (person under 13 years of age).  *People v. Washington*, No. 292318, 2010 WL 4868037 at *1 (Mich. App. Nov. 30, 2010).  The Michigan Court of Appeals summarized the underlying facts as follows:

>         The charges in the instant case stem from defendant's separate sexual assaults of twin sisters who briefly lived in his home with their mother during the summer of 2001.  Each victim testified that defendant assaulted her on an almost nightly basis in the upstairs area of the home where the girls slept.  In addition, each victim testified that on one occasion defendant assaulted her in the lower level of the home; one twin reported an incident that occurred in the bathroom, and the other twin reported an incident that occurred in the living room.  Neither victim was aware that the other twin was also being abused.

*Id*.  Petitioner was sentenced on each count to concurrent terms of 35 to 60 years imprisonment.  *Id*.

Petitioner, through counsel, raised two issues in his direct appeal to the Michigan Court of Appeals:

I.      Did Defendant-Appellant receive the effective assistance of counsel at trial where counsel approved of inadequate jury instructions regarding the unanimity requirement; is prejudice presumed and/or established where there is a reasonable probability that the result of the proceeding would have been different as illustrated by the jury's express confusion over the unanimity requirement?

II.     Did the prosecutor deny defendant his state and federal constitutional right to a fair trial by essentially forcing defendant to comment on the credibility of prosecution witnesses? Was counsel ineffective for failing to preserve the issue for appeal?

Appellate Brief (ECF No. 27).[1]

The Michigan Court of Appeals affirmed the convictions and sentences. *See Washington*, 2010 WL 4868037. Petitioner raised the same two issues in his pro per application for leave to appeal to the Michigan Supreme Court, which that court denied because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Washington*, 489 Mich. 933, 797 N.W.2d 149 (May 24, 2011); Michigan Supreme Court transcript (ECF No.28). Petitioner raised the same two issues in his petition seeking habeas corpus relief under 28 U.S.C. § 2254. *See* Petition (ECF No. 1, PageID.5-6); "Attachment A" (ECF No. 1-1, PageID.11).[2]

---

[1] ECF No. 27 consists of two (paper) transcripts, the trial court sentencing transcript and the transcript of proceedings in the Michigan Court of Appeals. The Court notes that petitioner electronically filed a copy of his appellate brief as an attachment to his petition (ECF No. 1-1, PageID.57-99).

[2] On February 8, 2012, more than two months after filing his federal habeas petition, petitioner filed a motion for relief from judgment in the state court raising five new claims. *See* Motion (ECF No. 29). That motion was denied on March 15, 2012, denied on reconsideration, and denied on appeal. *See* Kalamazoo (Kal.) Co. Cir. Ct. (Order) (ECF No. 42-3, PageID.406-415). This Court denied petitioner's motion to stay the case while he litigated these new claims. *See* Order (April 23, 2012) (ECF No. 9); Order denying reconsideration (Feb. 26, 2013) (ECF No. 32). The state court denied petitioner's second motion for relief from judgment on January 16, 2015. *See* Kal. Co. Cir. Ct. (Order) PageID.406-415. On March 30, 2015, this Court denied another motion to stay the proceedings to allow petitioner to pursue the second motion in

## II.    Procedural default

## A.    Legal standard

Respondent points out that the prosecutorial misconduct claim (Issue II) is procedurally defaulted because petitioner failed to comply with a state procedural rule. As a result, the Michigan Court of Appeals addressed this claim as one of unpreserved constitutional error. *See Washington*, 2010 WL 4868037 at *3; *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("a state court's plain error analysis does not save a petitioner from procedural default" and "is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits"). Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Although petitioner's prosecutorial misconduct claim was procedurally defaulted, this Court is not foreclosed from deciding the merits of the claim. For purposes of judicial economy, the court can address the merits of a procedurally defaulted claim, e.g., if the claim is "easily resolvable against the habeas petitioner" and "the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). *See Storey v. Vasbinder,* 657 F.3d 372, 380 (6th Cir. 2011) (addressing the merits after observing that "[t]he extent to which these claims are

---

state court. *See* Order (ECF No. 40). Finally, on January 18, 2017, this Court denied petitioner's motion to amend the habeas petition. *See* Order (ECF No. 46).

procedurally defaulted is a nettlesome question; the extent to which they are meritless, much less so"); *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (addressing the merits because "the cause-and-prejudice analysis adds nothing but complexity to the case"). Given the posture of this case, judicial economy dictates that the Court address the merits of this procedurally defaulted claim, which is intertwined with petitioner's claims of ineffective assistance of counsel.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *See* 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied"). In the present case, petitioner has exhausted all remedies with respect to the two claims at issue in this action.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011) (internal quotation marks omitted). The federal habeas statute "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Finally, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Discussion

### A. Ineffective assistance of trial counsel regarding jury instruction

#### 1. State court proceedings

Petitioner contends that his trial counsel was ineffective because he approved an inadequate jury instruction with respect to the unanimity of the jury. Here, the trial court instructed the jury on the elements of the crimes and the requirement for a unanimous verdict[3]:

> I'm turning now to the elements of the offenses alleged in this case. I'm just giving the instruction once. The alleged offense is the same in each of the four counts.

> The defendant is charged with a crime of first degree criminal sexual conduct. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the defendant engaged in a sexual act that involved entry into B.T. and/or M.G's genital or anal opening by the defendant's

---

[3] In addressing petitioner's claims, the Court will refer to the victims by their initials, B.T. and M.G.

penis, finger, tongue or other object.  Any entry, no matter how slight, is enough.  It does not matter whether the sexual act was complete or whether semen was ejaculated.

Second, that B.T. and/or M.G. was less than 13 years old at the time of the alleged act.

The prosecutor must also prove beyond a reasonable doubt that the crimes occurred during the summer of 2001 within Kalamazoo County.

To prove the criminal sexual conduct charges, it is not necessary that there be evidence other than the testimony of B.T. and M.G. if that testimony proves guilt beyond a reasonable doubt.

To prove the criminal sexual conduct charges, the Prosecutor does not have to show that B.T. and/or M.G. resisted the defendant.

\*       \*       \*

Turning back then to the instructions, a verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agrees on that verdict.  In the jury room, you will discuss the case among yourselves but ultimately, each of you will have to make up your own mind.  Any verdict must represent the individual considered judgment of each juror .

\*       \*       \*

The defendant is charged with four counts; that is, with the crimes of criminal sexual conduct, first degree, and each count alleges that offense.  These are separate crimes.  The Prosecutor is charging that the defendant committed all of them.  You must consider each crime separately in light of the evidence of the case.  You may find the defendant [sic] of all or any combination of these crimes or not guilty.

\*       \*       \*

When you achieve a unanimous verdict, the foreperson should complete the form consistent with the verdict, date it, sign it, and bring it with you back to the courtroom.

Trial Trans. III, pp. 135-36, 138-39  (ECF No. 25).

The trial judge also instructed the jury on the contents of the jury verdict form:

Just to go through that form, it reads as follows: 'We, the jury, find the defendant,' and then there's an instruction, mark only one box for each count. Count 1 reads 'not guilty or guilty criminal sexual conduct, first degree,' and then identifies the alleged victim B.T.

Count 2 is the same but I emphasize this is a different offense.

Count 3 reads 'not guilty or guilty of criminal sexual conduct, first degree,' and then identifies the alleged victim M.G.

Count 4 is similar to Count 3, but again I emphasize this is a separate offense.

Trial Trans. III at p. 139.

During their deliberation, the jurors sent the trial judge two notes regarding elements of the offense:

The second and third questions arrived simultaneously at mid-morning. Again, I discussed them with counsel and then responded. The first one is, "Are we looking at the four specific stories about the girls, one on the bed downstairs, one in the bathroom downstairs, one in the back room upstairs, one in the back room upstairs, or is it just enough that they had multiple assaults on them."

The third question was, "Do the two counts for each girl require that at least one sexual act occurred upstairs and one downstairs for each girl, or doesn't the location matter."

I replied by agreement, "Please rely on the jury instructions and your collective memory of the evidence."

Counsel, does that accurately describe the communications you're aware of and how they were responded to?

[Prosecutor]:            It does, your Honor.

[Defense counsel]:     Yes, your Honor.

Trial Trans. IV at pp. 3-4 (ECF No. 26).

The Michigan Court of Appeals addressed petitioner's claim as follows:

Defendant first argues that he was denied the effective assistance of counsel when trial counsel approved a general unanimity instruction, especially in light of indications that the jury was confused on this point. We disagree.

Claims of instructional error are reviewed de novo. *People v. McGhee*, 268 Mich. App. 600, 606, 709 N.W.2d 595 (2005). To establish ineffective assistance of counsel during trial, a defendant must show that his trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; that but for his counsel's errors, there is a reasonable probability that the results of the trial would have been different; and that the proceedings were fundamentally unfair or unreliable. *People v. Toma*, 462 Mich. 281, 302-303, 613 N.W.2d 694 (2000); *People v. Rodgers*, 248 Mich.App. 702, 714, 645 N.W.2d 294 (2001). Our review is limited to errors apparent on the record because no evidentiary hearing was held below. *People v. Scott*, 275 Mich.App. 521, 526, 739 N.W.2d 702 (2007).

*People v. Cooks*, 446 Mich. 503, 521 N.W.2d 275 (1994), is applicable and dispositive on this issue. In *Cooks*, our Supreme Court concluded that:

> when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. When neither of these factors is present, . . . a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of his right to a unanimous verdict. [*Id*. at 530, 521 N.W.2d 275.]

In reaching the conclusion that a specific unanimity instruction was not required, the *Cooks* Court considered that "the evidence offered to support each of the alleged acts of penetration was materially identical," specifically noting that the victim's testimony in that case involved similar acts that occurred in the same general location over an unspecified but identifiable time period. *Id*. at 528, 521 N.W.2d 275. The *Cooks* Court held "the multiple acts" were "tantamount to a continuous course of conduct." *Id*. In addition, the Court noted the defendant in *Cooks* "did not present a separate defense or materially distinct evidence of impeachment regarding any particular act." *Id*. Accordingly, "the sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct." *Id*.

The present case is substantially similar to that of *Cooks*. Here, each victim provided unequivocal testimony of multiple instances of vaginal penetration by

defendant's penis, occurring in the same house over an unspecified period in the summer of 2001. Although defense counsel made arguments and questioned witnesses at trial in such a way as to attempt to poke holes through the prosecutor's case, no witnesses were presented to specifically impeach the victims' respective version of events. Instead, defendant merely denied the existence of any inappropriate behavior involving sexual penetration. Hence, just as the Michigan Supreme Court in *Cooks* specifically found that the location of the various acts and the impeachment testimony did not "materially distinguish any of the separate acts," we conclude that even where the acts in the present case occurred in different locations and defendant sought to show inconsistencies in, and reasons to question, the victims' testimony, this does not materially distinguish any of the separate acts. *Id*. at 528 n. 31, 521 N.W.2d 275.

Further, we reject defendant's argument that a specific unanimity instruction was necessary given the fact that the jury requested clarification of its instructions during deliberations. We conclude that any juror confusion that was demonstrated in this case related solely to whether there needed to be agreement on the location of each specific act, which was not pertinent to a finding that the acts occurred. There is no evidence that the jurors disagreed about the factual basis that needed to be proved beyond a reasonable doubt in determining defendant's guilt. Thus, there was no need for a specific unanimity instruction. *Cooks*, 446 Mich. at 528, 521 N.W.2d 275. Rather, our review of the record demonstrates the trial court provided sufficient direction to the jury when it presented the general jury instructions and reviewed the verdict form, repeatedly indicating that the four charges were "separate crimes" and "different offense[s]," which the jury "must consider separately in light of all the evidence." Ultimately, we find the instructions did not deprive defendant of his right to a unanimous verdict. *Id*. at 530, 521 N.W.2d 275. Consequently, defense counsel's representation did not fall below an objective standard of reasonableness because counsel is not required to make an objection that would be futile. *People v. Milstead*, 250 Mich. App. 391, 401, 648 N.W.2d 648 (2002); *Rodgers*, 248 Mich. App. at 702, 645 N.W.2d 294.

*Washington*, 2010 WL 4868037 at *1-2.

## 2. Discussion

Petitioner contends that his counsel's approval of inadequate jury instructions regarding the unanimity requirement constituted ineffective assistance of counsel which deprived him of a fair trial "because there was no unanimous jury verdict in my case" Petition (ECF No. 1, PageID.5). In this regard, petitioner contends that: he was charged with multiple acts occurring

over a specific period of time; that each incident was argued by the prosecutor "under a different theory;" and that he had a right to insist that "[his] jury render its verdict unanimously to each charge under the theory advanced by the prosecution." *Id.* For the reasons discussed below, petitioner's claims are without merit.

Petitioner has framed this claim as one involving ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather

"whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."

*Id.*

In affirming petitioner's convictions, the Michigan Court of Appeals relied heavily on the Michigan Supreme Court's opinion in *Cooks*. In that opinion, the court explained that a criminal defendant's entitlement to a unanimous verdict arises under state law:

> While the Sixth Amendment of the federal constitution includes the right of an accused to a unanimous verdict in federal criminal prosecutions, *see Andres v. United States*, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948), the United States Supreme Court has held that the Fourteenth Amendment does not mandate unanimous verdicts for convictions in noncapital criminal prosecutions in state courts. *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). Thus, the right to a unanimous jury verdict in noncapital state criminal proceedings must be grounded in state law.
>
> At common law, civil as well as criminal defendants were entitled to unanimous jury verdicts. *See McRae v. Grand Rapids, L. & D.R. Co.*, 93 Mich. 399, 53 N.W. 561 (1892). This right was preserved by the ratifiers of the original Michigan Constitution, and the current version of the state constitution maintains the unanimity requirement, albeit in criminal prosecutions only.

*Cooks*, 446 Mich. at 510-11 (footnotes omitted).

This being the case, the question before this Court is whether petitioner's counsel was ineffective for allowing the trial court to give jury instructions which failed to meet Michigan's unanimous jury verdict requirement. After reviewing the relevant portions of the record, the Court agrees with the conclusions reached by the Michigan Court of Appeals.

The record reflects that victims testified with respect to at least four separate incidents of CSC I. In her answer, respondent fairly summarized the victims' testimony supporting the four counts of CSC I:

Both complainants testified generally to repeated acts of penile/vaginal penetration committed by Washington during the summer months of 2001, but both also testified to two specific acts of penetration each. (Tr. Vol. I, pp. 214-215, 218-220, 223-225, 228 (B.T.); Tr. Vol. II, pp. 86-97, 100 (M.G.)). B.T. specifically recalled the details surrounding an incident that occurred in the bathroom downstairs, as well as the first time Washington assaulted her during the night on her bed upstairs. (Tr. Vol. I, pp. 214-219, 223-224). She then generally added that it happened "every night" or "constantly" until she moved in 2003. (Tr. Vol. I, pp. 214, 218-219, 228). M.G. specifically testified that Washington penetrated her vagina with his penis for the first time during the night upstairs, giving the details of how he awakened her, took her to a vacant bedroom, removed her clothes, and then assaulted her. (Tr. Vol. II, pp. 88-95). M.G. went on to describe a second assault that occurred downstairs in the living room on Washington's bed. (Tr. Vol. II, pp. 97-100). M.G. also testified generally that she was assaulted "every day." (Tr. Vol. II, p. 96).

Respondent's Answer (ECF No. 16, PageID.219-220).

Petitioner's claim relies on alleged jury confusion as evidenced by two questions presented to the trial judge. Contrary to petitioner's claim, the questions presented by the jurors to the trial judge, involved the number of assaults and locations of those assaults. The questions did not indicate that they were confused, disagreed about the factual basis of petitioner's guilt, or could not reach a unanimous verdict on the alleged crimes. In summary, the facts of this case did not require more than the trial judge's general instruction regarding juror unanimity. *See Cooks*, 446 Mich. at 530. Given this record, petitioner's counsel had no basis to object to the jury instruction. "Trial counsel is not required to raise meritless objections." *Kelly v. McKee*, 847 F.3d 316, 325 (6th Cir. 2017). "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to relief on this claim.

## B. Prosecutorial misconduct

### 1. State court proceedings

Petitioner presented his defense as the defense's only witness. *See* Trial Trans. III. When he took the stand, petitioner testified that the accusations of the two victims were "not true." *Id*. at p. 53. Thus, petitioner's theory of the case was that the victims were lying. Petitioner contends that the prosecutor engaged in misconduct when he forced petitioner to comment on the credibility of the other witnesses on cross-examination. Petitioner also contends that his defense counsel was ineffective for failing to preserve the issue for appeal.

The Michigan Court of Appeals addressed this issue as follows:

We review defendant's unpreserved claims of prosecutorial misconduct for plain error affecting his substantial rights. *People v. Thomas*, 260 Mich.App. 450, 453-454, 678 N.W.2d 631 (2004). Issues of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context." *Id*. at 454, 678 N.W.2d 631. A defendant's conviction will ultimately be reversed only if it is determined that the defendant is actually innocent or the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings," regardless of his innocence. *People v. Ackerman*, 257 Mich.App. 434, 448-449, 669 N.W.2d 818 (2003). Error requiring reversal will not be found where a curative instruction could have alleviated any prejudicial effect." *People v. Callon*, 256 Mich.App. 312, 329, 662 N.W.2d 501 (2003). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements and jurors are presumed to follow their instructions." *People v. Unger*, 278 Mich.App. 210, 235, 749 N.W.2d 272 (2008) (citations omitted).

It is improper for a prosecutor to ask a defendant to comment on the credibility of the prosecution's witnesses. *People v. Buckey*, 424 Mich. 1, 17, 378

14

N.W.2d 432 (1985). However, prosecutors are generally accorded "great latitude" regarding their arguments and conduct during trial. *People v. Bahoda*, 448 Mich. 261, 282, 531 N.W.2d 659 (1995). In addition, a defendant "cannot complain of admission of testimony which defendant invited or instigated." *People v. Whetstone*, 119 Mich.App. 546, 554, 326 N.W.2d 552 (1982). Thus, even where a prosecutor's comments standing alone may seem improper, those comments may not constitute error requiring reversal if the comments were made in response to issues raised by defendant. *See People v. Duncan*, 402 Mich. 1, 16, 260 N.W.2d 58 (1977).

In this case, the prosecutor asked defendant during cross-examination whether the prosecution's witnesses were lying. At first glance, this appears to be an impermissible inquiry. However, our review of the record demonstrates that defendant himself initially raised the issue of witness credibility during his direct examination. Based on defendant's testimony, it is apparent that his theory of the case was that the victims and a child protective services worker were biased and were liars. Hence, the prosecutor's questions to defendant about the prosecution's witnesses' credibility were responsive to defendant's own statements. Accordingly, when reviewed in context, the prosecutor's questions do not constitute error requiring reversal. *Duncan*, 402 Mich. at 16, 260 N.W.2d 58; *Whetstone*, 119 Mich.App. at 554, 326 N.W.2d 552. Moreover, defendant could have halted the prosecutor's questions with a timely objection and requested a curative instruction, thereby alleviating any prejudice. *Unger*, 278 Mich.App. at 235, 749 N.W.2d 272. In any event, the trial court instructed the jury that it alone was authorized to determine the credibility of the witnesses who were presented at trial. Thus, any prejudice to defendant that may have resulted from the prosecutor's questions would have been cured. *Unger*, 278 Mich.App. at 235, 749 N.W.2d 272.

Further, we find it difficult to discern how the questions presented by the prosecutor prejudiced defendant. Our Supreme Court has held that a prosecutor's improper request for a defendant to comment on the credibility of other witnesses constitutes harmless error when the defendant handles his response "quite well." *Buckey*, 424 Mich. at 17, 378 N.W.2d 432. Here, as in *Buckey*, defendant responded to the prosecution's inquiry by generally providing detailed reasons why he thought that the witnesses were lying and biased. Thus, defendant has failed to establish that he was prejudiced by the prosecutor's questions.

In addition, as noted above, defendant's apparent theory of defense was that the prosecutor's witnesses were biased and lying. Therefore, the prosecutor's questions actually allowed defendant to continue to set forth his theory. *See People v. Knapp*, 244 Mich. App. 361, 385, 624 N.W.2d 227 (2001) (it was harmless error for the prosecutor to question defendant as to whether he thought that a witness was a liar where defendant's theory of the case was that other witnesses were lying and

conspiring against him). Based on the foregoing, defendant is not entitled to any relief. *Buckey*, 424 Mich. at 17, 378 N.W.2d 432.

We likewise reject defendant's alternative argument that he was denied the effective assistance of counsel due to defense counsel's failure to object to the errors alleged above. Because there was no error requiring reversal, counsel did not render ineffective assistance for not objecting to the prosecutor's questions to defendant. *Milstead*, 250 Mich.App. at 401, 648 N.W.2d 648 (counsel is not required to make a futile objection).

*Washington*, 2010 WL 4868037 at *3-4.

### 2. Discussion

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "On habeas review, claims of prosecutorial misconduct are reviewed deferentially." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citation and internal quotations omitted). In evaluating claims of prosecutorial misconduct, the court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

Petitioner's claim of prosecutorial misconduct is based upon a few questions posed to him on cross-examination concerning how often the victims' mother was present. Appellate Brief

(ECF No. 1-1, PageID.92-95).[4]   During his direct examination, petitioner denied the victim's accusations:

> Q.   Now, we've heard a lot of testimony about things that you allegedly done.  Did you do those things?
>
> A.   No, sir.
>
> Q.   Absolutely positive?
>
> A.   I'm absolutely positive, sir.
>
> *       *       *
>
> Q.   Now, there's been accusations that you had inappropriate contact with these two girls. Are any of these accusations true?
>
> A.   No, sir, they not true.
>
> *       *       *
>
> Q.   At any time did you sexually assault either one of these girls that testified today?
>
> A.   Sir, I never messed with them little girls.  I would never mess with no babies.

Trial Trans. III at pp. 53, 58.

In addition, petitioner denied that he was addicted to sex, and that the matter of sex addiction arose from a detective telling petitioner that he was not a rapist or a molester, but that he

---

[4] This line of questioning was relevant to evidence that petitioner was a sex addict, to corroborate testimony by a victim that her mother was not always there, and to address petitioner's testimony that the victims' mother was present all of the time and available for sex (petitioner testified that he told the detectives that the victims' mother "was always around and whenever I wanted to indulge in a relationship with her, me and her would spend time together when it was appropriate"). *See* Prosecutor's closing argument, Trial Trans. III at pp. 62-63, 108.

had an addiction. *Id*. at pp. 54-55. Petitioner testified the detective(s) "got me here and they just

lying on me, sir . . . they just lying on me like this, you know." *Id*. at p. 55.

On cross-examination, petitioner testified that he told Detective Ellis that the victims'

mother had a drug problem, and that is why he "kicked" her and the girls out of the house. *Id*. at p.

62. Petitioner denied that he told Detective Ellis that the victims' mother "wasn't around a lot."

*Id*. Rather, petitioner stated that the victims' mother "was there the majority of the times that I was

there." *Id*. When asked if Detective Ellis was "outright lying 'cause she's got some grudge,"

petitioner stated that "[s]he outright lied and said that she had DNA evidence that will prove me

guilty." *Id*. at p.64.

The prosecutor then asked petitioner about the victims' testimony:

Q.     Mr. Washington, did you hear the girls testify that their mom was
       never around?

A.     Yes, I did.

Q.     Did they lie about that?

A.     Yes, they did.

*Id*. at p. 64.

With respect to the victims' accusations, the prosecutor asked petitioner "So you think

she [the victims' mother] and the girls put this together because you kicked her [the victims' mother]

out?," to which petitioner replied, "Pretty much, because I would see her every day and she never

approached me saying that anything happened or anything." *Id*. at p. 65.

Petitioner also cites two pages of the trial transcript (Trial Trans. III at pp. 77-78) "in

which the prosecutor asked Mr. Washington whether witnesses [Detective] Vaughn, [victim B.T.],

18

[victim M.G.], [Children's Protective Services worker] Carneal, and [Detective] Ellis lied in their testimony, to which he responded they did."  Appellate Brief at PageID.95.

This testimony is reflected in the transcript as follows:

Q.      You're telling us the girls took the stand and lied?

A.      Yes, I am.  I'm telling you they lied.

Q.      Allyson Carneal took the stand and lied?

A.      Yes.

Q.      Detective Ellis took the stand and gave us misinformation?

A.      Yes.

Q.      Detective Vaughn took the stand and gave us misinformation?

A.      Yes.

Q.      So all those people gave us misinformation and that's why we're here?

A.      That's pretty much why we here, yeah.

Q.      Mr. Washington, did you sexually assault B.T.?

A.      No, I would never mess with no little girl.

Q.      Did you rape M.G.?

A.      No.

*Id*. at p. 78.

Petitioner's sole defense was one of credibility, i.e., that he was telling the truth and the other witnesses were lying.  Several courts have held that "asking one witness whether another is lying is inappropriate," and that "[s]uch questions invade the province of the jury."  *United States*

*v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006). *See United States v. Bailey*, 547 Fed. Appx. 756, 763 (6th Cir. 2013) ("Because credibility determinations are the responsibility of the jury to make, the Sixth Circuit has joined the majority of circuits in prohibiting parties from asking witnesses whether other witnesses lied, at least as a general rule."). However, questions posed to a defendant about the credibility of other witnesses "would obviously be proper if a defendant opened the door by testifying that another witness was lying." *Harris*, 471 F.3d at 512. The Sixth Circuit has recognized this exception to the general rule when it is necessary for the prosecution to perform a proper and effective cross-examination to elicit the truth. *See United States v. Dickens*, 438 Fed. Appx. 364, 370 (6th Cir. 2011) (citing *Harris*). *See also, United States v. Havens*, 446 U.S. 620, 626-27 (1980) ("It is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.").

Here, petitioner opened the door to the prosecutor's questions regarding the credibility of the government's witnesses when he testified that the victims' testimony was "not true" and that detectives were "lying." The prosecutor could not perform an effective cross-examination of petitioner – or, for that matter, even address petitioner's defense – without delving into petitioner's claim that he did nothing to the victims and that the government's witnesses were making false accusations and lying. Accordingly, based on the record in this case, the prosecutor did not engage in misconduct by asking petitioner if the other witnesses lied on the witness stand.

Given this result, petitioner's claim of ineffective assistance of counsel is without merit, because there was no basis for objecting to the prosecutor's cross-examination. *See Kelly*, 847 F.3d at 325 (6th Cir. 2017); *Coley*, 706 F.3d at 752.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### V. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: August 9, 2017          /s/ Ray Kent_____
                               RAY KENT
                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).